OPINION
{¶ 1} Defendant-appellant Paul Humphrey appeals from the trial court's denial of his motion to withdraw his negotiated plea of guilty to Aggravated Robbery, made eighteen months after his conviction and sentence. Humphrey contends that the trial court erred by denying his motion without a hearing. Humphrey also contends that the trial court erred by denying his motion for discovery pursuant to Crim.R. 16.
 {¶ 2} Humphrey's motion to withdraw his guilty plea was based upon his recent conclusion that his co-perpetrator, Michael Eisen, was a police informer. Humphrey asserted that he now realized that he had a viable defense of entrapment.
 {¶ 3} We agree with the trial court that Humphrey's motion failed to establish a reasonable likelihood that he could prove the existence of manifest injustice, required by Crim.R. 32.1 for the withdrawal of a guilty plea after sentence has been imposed. We agree with the trial court that Humphrey's own motion and affidavit indicated that he would be unable to prove that he was an innocent person, otherwise indisposed to commit the offense, into whose mind a government agent implanted the disposition to commit the offense. Furthermore, we conclude that Crim.R. 16 contemplates motions for discovery before or during trial, not during post-conviction proceedings.
 {¶ 4} Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 5} In December, 1999, Humphrey was charged by indictment with one count of Aggravated Robbery with a three-year firearm specification, and one count of Having Weapons While Under Disability. On February 3, 2000, Humphrey entered into a negotiated plea agreement, whereby he pled guilty to one count of Aggravated Robbery, and the State dismissed the firearm specification and the other count. Humphrey and the State agreed on a sentence of five years. The trial court accepted Humphrey's plea, and sentenced him to five years imprisonment.
 {¶ 6} In August, 2001, Humphrey filed a motion to withdraw his guilty plea, and a motion for discovery pursuant to Crim.R. 16. Humphrey submitted his own affidavit and other evidentiary materials in support of his motion. Essentially, Humphrey argued that he had only recently become aware of facts leading him to the conclusion that his co-perpetrator, Michael Eisen, was a police informant. Humphrey contended that he now realized he had a viable defense of entrapment, so that his conviction and sentence constituted manifest injustice, within the contemplation of Crim.R. 32.1. Humphrey also requested a hearing on his motion.
 {¶ 7} The trial court denied Humphrey's motion to withdraw his plea, without a hearing. The trial court also denied his motion for discovery. From the denial of his motion to withdraw his plea, Humphrey appeals.
 {¶ 8} Humphrey originally filed his own, pro se brief, to which the State responded. We subsequently assigned counsel to represent Humphrey on appeal, who has filed a brief on Humphrey's behalf. The State subsequently responded to appellate counsel's brief.
 {¶ 9} Where an appellant in a criminal case files both his own, pro se brief, and a brief prepared by assigned counsel, our practice is to consider only the brief prepared by counsel, and we follow that practice here. Although we have not read Humphrey's pro se brief, we have read the assignments of error recited therein, and they appear to be substantially the same as the assignments of error asserted in his counsel's brief.
 {¶ 10} Humphrey has filed a "Motion to Consider Applicability of Ohio Supreme Court Decision in State v. Bush, 96 Ohio St.3d 235,2002-Ohio-3993 to Instant Case." We have done so. We are not sure of its relevance. That case stands for the proposition that the time limits for filing a petition for post-conviction relief do not apply to motions to withdraw guilty pleas, but Humphrey's motion to withdraw his guilty plea was not denied upon the ground that it was untimely, and our decision to affirm its denial is not predicated upon the ground that it was untimely.
 {¶ 11} Possibly Humphrey is suggesting that analogies between the amount of proof a defendant must proffer to obtain a hearing on a motion to withdraw a guilty plea and the amount of proof required to obtain a hearing on a petition for post-conviction relief are no longer viable in light of State v. Bush, supra. We disagree. The General Assembly has imposed time limits for the filing of a petition for post-conviction relief, and we agree with Humphrey that those time limits are not applicable to a motion to
 {¶ 12} withdraw a guilty plea. The amount and quality of proof a petitioner for post-conviction relief must proffer to obtain a hearing was originally a subject of common law. See State v. Kapper (1983),5 Ohio St.3d 36. Later, that subject was covered by the post-conviction relief statute, itself, where the common law requirement was essentially codified. R.C. 2953.21(E). Motions to withdraw guilty pleas are the subject of Crim.R. 32.1, which does not address the circumstances under which the trial court is required to hold an evidentiary hearing on the motion. In our view, analogies to other forms of post-conviction relief are useful in determining when an evidentiary hearing is required, and we find nothing in State v. Bush, supra, to dissuade us from that view.
 {¶ 13} Humphrey's motion to have this court consider the applicability of State v. Bush, supra, is granted. We have considered its applicability.
 II {¶ 14} Humphrey's first three assignments of error are as follows:
 {¶ 15} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY FINDING APPELLANT'S PLEA VOLUNTARILY, INTELLIGENTLY AND KNOWINGLY MADE WHEN APPELLANT DID NOT KNOW OF A POTENTIAL DEFENSE AT THE TIME OF THE PLEA."
 {¶ 16} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA PURSUANT TO CRIMINAL RULE 32.1 WHEN THE WITHDRAWAL OF THE PLEA WAS NECESSARY TO CORRECT A MANIFEST INJUSTICE."
 {¶ 17} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT DENIED APPELLANT'S MOTION TO WITHDRAW GUILTY PLEA WITHOUT AFFORDING APPELLANT THE OPPORTUNITY FOR A HEARING."
 {¶ 18} The essence of all of these assignments of error is Humphrey's contention that the trial court erred when it denied his motion to withdraw his guilty plea, without a hearing. Pursuant to Crim.R. 32.1, a motion to withdraw a guilty plea made after sentencing should only be granted "to correct manifest injustice."
 {¶ 19} An evidentiary hearing is not required in every case involving a motion to withdraw a plea of guilty. State v. Lagree (1988),61 Ohio App.3d 568, 574. The burden is on the defendant to make a prima facie showing of merit before a trial court is required to hold an evidentiary hearing on a motion to withdraw a guilty plea. See State v.Smith (December 10, 1992), Cuyahoga App. No. 61464.
 {¶ 20} In the case before us, the trial court expressed skepticism whether Humphrey had made an adequate showing that Eisen, his co-perpetrator, was a government agent. The trial court then observed:
 {¶ 21} "Even if, arguably, the Defendant could somehow have met his burden of establishing government involvement in this offense, he, by his own admission, has been convicted and incarcerated three times in the past for the very offense of which he was convicted in the present matter: aggravated robbery. It is difficult [to] conceive of a situation in which a predisposition to commit the offense charged would be more pronounced. Therefore, since the defendant has failed to meet his evidentiary burden and since the defense which he claims would be available to him is negated by his apparent predisposition to commit the instant offense, the Defendant's Motion to Withdraw his Guilty Plea is DENIED."
 {¶ 22} We note that besides acknowledging that he had three prior convictions for Aggravated Robbery, Humphrey, in his motion, recited that: "He had just served a thirteen (13) year sentence for Aggravated Robbery."
 {¶ 23} The defense of entrapment is defined in State v. Doran
(1983), 5 Ohio St.3d 187, at 192:
 {¶ 24} "Consequently, where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute, the defense of entrapment is established and the accused is entitled to acquittal. [citations omitted.] However, entrapment is not established when government officials `merely afford opportunities or facilities for the commission of the offense' and it is shown that the accused was predisposed to commit the offense. [citation omitted.]"
 {¶ 25} In that same case, also at 5 Ohio St.3d 192, the Ohio Supreme Court discussed matters relevant to the issue of predisposition:
 {¶ 26} "While evidence relevant to predisposition should be freely admitted, judges should be hesitant to allow evidence of the accused's bad reputation, without more, on the issue of predisposition. Rather, while by no means an exhaustive list, the following matters would certainly be relevant on the issue of predisposition: (1) the accused's previous involvement in criminal activity of the nature charged, (2) the accused's ready acquiescence to the inducements offered by the police, (3) the accused's expert knowledge in the area of the criminal activity charged, (4) the accused's ready access to contraband, and (5) the accused's willingness to involve himself in criminal activity. . . ."
 {¶ 27} As noted, Humphrey's three prior Aggravated Robbery convictions, for one of which he had only "just" been released from prison, strongly suggests his predisposition to commit the offense to which he pled guilty. Humphrey argued, in support of his motion, that his three prior Aggravated Robbery offenses were drug-related, and that he was no longer drug dependent. Be that as it may, Humphrey's motion and affidavit evidenced no unwillingness on his part to commit this offense.
 {¶ 28} In his affidavit, Humphrey avers that he learned from Jerry Stafford that Eisen had attempted, without success, to recruit Stafford, and others, to commit robberies, including the robbery involved in this case. However, Humphrey does not aver that he expressed any particular reluctance when Eisen recruited him for the robbery. The portion of Humphrey's affidavit setting forth the events leading to the commission of the offense are worth setting forth in detail, as follows:
 {¶ 29} "16. That Michael C. Eisen had me drive him to his nephew's house where he went into the garage and produced a gym bag containing a baseball cap, stocking mask, wig, T shirt, and a pair of black leather gloves. Eisen handed me all the items excluding the wig and T shirt.
 {¶ 30} "Eisen then pulled a 9 millimeter handgun from the waistband of his pants and placed it in my hand.
 {¶ 31} "17. That Michael C. Eisen, after placing the 9 millimeter handgun in my hand, said I would have to commit the robbery because the woman knew him and would recognize him by his build and skin tone.
 {¶ 32} "18. That Michael C. Eisen did turn my car back into the alley and sat there while the man in the SUV wrote my license number down. He then proceeded to drive slowly so that we could be followed. Eisen then left my car sitting in the middle of the alley behind Ronald Jackson's house at 131 Drumer Avenue in Dayton, Ohio.
 {¶ 33} "When confronted on driving slowly Eisen said the car would not go any faster; then said the seat was to [sic] far back for him to reach the floorboard.
 {¶ 34} "19. That Michael C. Eisen had lead [sic] me to believe he had successfully committed bank and other robberies.
 {¶ 35} "20. That Michael C. Eisen gained my confidence by, (1) Buying a weight bench with me and setting up all of his weights in my house; (2) offering to perform Pro bono carpentry for me on my house once I bought it; (3) by buying me drinks at bars once I ran out of money; (4) giving me the aluminum wheels and seat out of his pickup truck free of charge.
 {¶ 36} "21. That all three (3) of my previous convictions were all `drug releated' [sic]. I had promised myself I was through with drugs and had not done ANY after my release.
 {¶ 37} "22. The ONLY reason I committed the robbery in the instant action was because of Michael C. Eisen's inducements.
 {¶ 38} ". . .
 {¶ 39} "25. That the plan for the robbery in the instant action was Michael C. Eisen's plan. He knew what day, time, how much money, and the exact spot the woman would park her truck.
 {¶ 40} "26. That in open court the victim, Pamela Fecke, admitted she knew it was Michael C. Eisen who planned the robbery.
 {¶ 41} "27. That I thought Michael C. Eisen was just acting macho at first trying to impress me. That we would never do a robbery."
 {¶ 42} Conspicuously missing from Humphrey's averments is any suggestion that he did not readily acquiesce to Eisen's inducements to commit the offense, or any indication of a lack of willingness on Humphrey's part to involve himself in criminal activity. Consequently, and consistently with State v. Doran, supra, we conclude that the trial court correctly determined that Humphrey failed, in his motion and supporting affidavit, to establish a prima facie case for entrapment, because he failed to establish any reasonable likelihood that the criminal design in this case originated with an official of the government and was implanted in the mind of an innocent person not otherwise disposed to commit the offense. Accordingly, there was no reasonable likelihood that Humphrey could meet his burden of establishing that the withdrawal of his guilty plea was necessary to correct manifest injustice, and the trial court was within its discretion in denying his motion to withdraw his guilty plea.
 {¶ 43} Humphrey's First, Second and Third Assignments of Error are overruled.
 III {¶ 44} Humphrey's Fourth Assignment of Error is as follows:
 {¶ 45} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT REFUSED APPELLANT DISCOVERY CONCERNING CO-DEFENDANT EISEN."
 {¶ 46} Humphrey's motion for discovery was expressly predicated upon Crim.R. 16. That rule is clearly concerned with discovery before and during trial. Crim.R. 16(D). Motions for discovery pursuant to Crim.R. 16 must be made within 21 days after arraignment or seven days before the date of trial, whichever is earlier, or at such reasonable time later as the court may permit, and a motion subsequent to an original motion for discovery "may be made only upon showing of cause why such motion would be in the interest of justice." Crim.R. 16(F).
 {¶ 47} We agree with the State that discovery, pursuant to Crim.R. 16, is not available in post-conviction proceedings, including proceedings concerning a motion to withdraw a guilty plea. Accordingly, the trial court did not err by denying Humphrey's motion for discovery. Of course, if Humphrey had been successful in withdrawing his plea, the matter would presumably then have been set for trial, and Humphrey could then have applied for leave to file a pretrial motion for discovery, pursuant to Crim.R. 16(F).
 {¶ 48} Humphrey's Fourth Assignment of Error is overruled.
 IV {¶ 49} All of Humphrey's assignments of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and YOUNG, J. concur.